**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RICKY BISCHOFF et al.,

                                Plaintiffs,

v.                                                      Civil No.  20-1984 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                                Defendants.

---

DOUGLAS ANDERSON et al.,

                                Plaintiffs,

v.                                                      Civil No.  20-2010 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                                Defendants.

---

MARCO BRIONES,

                                Plaintiff,

v.                                                      Civil No.  20-2042 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                                Defendants.

---

---

ROBERT AKIN et al.,

                              Plaintiffs,

v.

                                                    Civil No.  20-2125 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                              Defendants.

---

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTIONS TO REMAND**

---

Daniel E. Gustafson and Amanda M. Williams, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; and Alicia N. Sieben, Matthew James Barber, and William R. Sieben, **SCHWEBEL GOETZ & SIEBEN PA**, 80 South Eighth Street, Suite 5120, Minneapolis, MN 55402, for plaintiffs;

Benjamin W. Hulse, Jerry W. Blackwell, and S. Jamal Faleel, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415 for defendant 3M Company; and Faris Rashid, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendant Aearo Technologies LLC.

Plaintiffs wore Combat Arms Earplugs, Version 2 (the "CAEv2"), manufactured by

Defendants 3M Company and Aearo Technologies (collectively, "3M"), to protect against

loud and damaging sounds during military service.  Each Plaintiff asserts that 3M failed to

provide adequate instructions and warnings concerning how to properly wear the CAEv2

and, as a result, he now suffers hearing loss and/or developed tinnitus.  Thus, Plaintiffs

filed actions in Minnesota state court, alleging a single product liability claim for failure to

warn.  3M removed Plaintiffs' actions to federal court, asserting several jurisdictional

grounds.  Plaintiffs move the Court to remand for lack of subject matter jurisdiction.

With respect to the government contractor defense, 3M fails to demonstrate a

conflict between a uniquely federal interest and a state law duty to warn, which makes

this defense uncolorable.  With respect to the combatant activities exception, 3M fails to

establish that it was a private service contractor integrated into combatant activities over

which the military retained command authority, which renders this defense similarly

uncolorable.  Additionally, because each Plaintiff alleges that his injuries only arose once

deployed overseas, federal enclave jurisdiction is lacking.  Finally, based on the Court's

earlier ruling in a related case, 3M is precluded from asserting Article IV and admiralty

jurisdiction.  In sum, the Court lacks subject matter jurisdiction over Plaintiffs' actions.

The Court will therefore grant Plaintiffs' Motions to Remand.

## BACKGROUND

### I.  FACTUAL BACKGROUND

There are sixty-six Plaintiffs.  (ECF 20-1984, Bischoff Compl. ¶¶ 5–14, Sept. 17,

2020, Docket No. 1-1; ECF 20-2010, Anderson Compl. ¶¶ 5–34, Sept. 21, 2020, Docket No.

1-1; ECF 20-2042, Briones Compl. ¶ 5, Sept. 21, 2020, Docket No. 1-1; ECF 20-2125, Akin

Compl. ¶¶ 5–29, Oct. 7, 2020, Docket No. 1-1.)  Each served in the military and wore the

CAEv2 when exposed to damaging, loud impulse, high-pitched sounds during his service.

(*See, e.g.*, Bischoff Compl. ¶¶ 17, 20.)    Each also alleges that he never received

instructions to fold back the third flange of the CAEv2 or a warning that the earplug would be ineffective if he did not do so and, as a result, he now suffers from hearing loss and/or tinnitus. (*See, e.g.*, *id.* ¶¶ 21–22.)

There are some differences between the Plaintiffs. First, Plaintiff Briones served in the Navy and singularly alleges injuries arising at sea, specifically the Persian Gulf, when wearing the CAEv2 and exposed to damaging sounds. (Briones Compl. ¶¶ 8, 10–12.) However, like the *Bischoff* and *Anderson* Plaintiffs, he alleges that he never wore the CAEv2 on a stateside military base. (*Id.* ¶ 9; *e.g.*, Bischoff Compl. ¶ 19.) The *Akin* Plaintiffs, on the other hand, allege that they wore the CAEv2 stateside. (*See, e.g.*, Akin Compl. ¶¶ 32–33, 40, 61, 103, 131, 166, 180.) However, like all the others, these Plaintiffs also allege that they only began to suffer harm once exposed to explosions or heavy weapons during combat overseas. (*See, e.g., id.* ¶¶ 34–35, 76–77, 188–89.)

After Plaintiffs filed actions in Minnesota state court, alleging that 3M failed to instruct or warn them regarding how to properly fit and safely wear the CAEv2, (*see, e.g.*, Bischoff Compl. ¶¶ 105–19), 3M gave notice of removal, arguing that the Court has subject matter jurisdiction based upon (1) the government contractor defense, (2) the combatant activities exception, (3) federal enclave jurisdiction, (4) Article IV of the United States Constitution, (*see, e.g.,* ECF 20-2125, Akin Notice of Removal at 3–4, Oct. 7, 2020, Docket No. 1), and (5) admiralty jurisdiction (*see* ECF 20-2042, Briones Notice of Removal

at 3, Sept. 23, 2020, Docket No. 1.)  Plaintiffs then filed Motions to Remand.  (*See, e.g.*, ECF 20-2125, Akin Mot. to Remand, Nov. 6, 2020, Docket No. 14.)

In support of its government contractor defense, 3M has provided the following evidence.  First, the relevant relationship with the military began in 1997, when the latter was looking for a dual-sided earplug to mitigate the hazards posed by weapons fire.  (*See* ECF 20-1984, Decl. of Benjamin W. Hulse ("Hulse Decl.") ¶ 7, Ex. 1 at 2, 5, Nov. 10, 2020, Docket No. 16-1.) In 1999, the military drafted a first set of instructions for the CAEv2 prior to purchasing it, but no instruction was given to pull back the flange of the non-inserted end to ensure a proper fit, as it seems like this issue was not yet known by either the military or 3M.  (*See* Hulse Decl. ¶ 17, Ex. 11 at 2–3, Nov. 10, 2020, Docket No. 16-11.) However, 3M then performed tests in 2000, which revealed that the CAEv2 tended to imperceptibly loosen and leave the user unprotected from loud noises unless the flanges on the opposing end were folded back.  (*See* Hulse Decl. ¶ 28, Ex. 22 ("Berger Dep.") at 241:8–244:3, Nov. 10, 2020, Docket No. 16-22.)  Based upon these tests, 3M found that "[i]t looks like the existing product has problems unless the user instructions are revised." (*See* Berger Dep. at 334:2–335:8.)

3M does not recall providing the military with the test results, (*id.* at 333:22–334:1, 352:15–25), but it claims to have orally communicated to the military that "to get optimum performance for labeling purposes [with respect to its noise reduction rating] would require this fold-back instruction," (*id*. at 297:6–22, 357:13–359:12.)  A related

fold-back instruction is also said to have been provided to the military and, a couple of years after the tests, the military did make a change to the wallet card given to soldiers for the CAEv2, instructing those with "very large" ear canals to fold the opposing plug back. (*Id.* at 295:1–10, 352:3–14; Hulse Decl. ¶ 26, Ex. 20 at 2, Nov. 10, 2020, Docket No. 16-20).

However, 3M could not recall if it mentioned that the flange of the opposing end had to be folded back to ensure a proper fit, as opposed to increasing its optimum noise reduction performance, (*see* Berger Dep. at 296:25–298:7, 351:19–352:1), or that the CAEv2's predilection for imperceptibly loosening was "agnostic about [the size of] ear canals," (*see id.* at 350:25–351:6.) Additionally, 3M employee Brian Meyers did not recall if 3M ever told the military that a warning or caution needed to be added to address how the flanges must be folded back to get a proper fit, (Hulse Decl. ¶ 20, Ex. 14 at 249:13–250:9, Docket No. 16-14), even though, as stated by another 3M employee, Marc Santoro, 3M knew that "a quality instruction sheet" would benefit the "average soldier" given that they are "not really understanding how to use the plug" by pulling the flanges back, (Hulse Decl. ¶ 19, Ex. 13 ("Santoro Dep.") at 185:5–12, 186:10–18, Nov. 10, 2020, Docket No. 16-13.)

When shipments of the CAEv2 began to be supplied, the military requested bulk packages without accompanying instructions, (*see* Santoro Dep. at 325:22–326:21), which Santoro asserted in 2019 was because the military felt that military audiologists could

best train soldiers how to wear them, (*see id.* at 326:22–327:3.)  Santoro further added

that, while 3M did not send instructions with the shipments, it did provide instructions to

military audiologists concerning the proper insertion of the CAEv2.  (*See id.* at 329:19–

24.)  However, a senior 3M scientist, Elliott Berger, stated  in 2001 that instructions were

not sent with the bulk shipments because "right now the volumes are very small.  Costs

were kept low, and I don't believe any [instructions] were requested" by the military.

(Hulse Decl. ¶ 35, Ex. 29 at 2, Nov. 10, 2020, Docket No. 16-29.)

Then, on August 24, 2004, the military audiologist in charge of the program, Doug

Ohlin, wrote to Meyers at 3M, expressing concern that soldiers in combat zones, including

Iraq, were not receiving proper instructions for the earplugs, as they were using the wrong

side of the CAEv2 for various combat environments.  (Hulse Decl. ¶ 23, Ex. 17 at 2, Nov.

10, 2020, Docket No. 16-17.)  Ohlin also noted that individual packaging may be better

than bulk, even with the additional cost.  (*Id.*)  Meyers responded that 3M could start

sending individually packaged bags imprinted with instructions.  (*Id.*)

## DISCUSSION

### I.  STANDARD OF REVIEW

A defendant may remove a civil action to federal court only if the action could have

been filed originally in federal court.  *See* 28 U.S.C. § 1441(a); *Gore v. Trans World Airlines*,

210 F.3d 944, 948 (8th Cir. 2000).  "A defendant is not permitted to inject a federal

question into an otherwise state-law claim and thereby transform the action into one

arising under federal law." *Gore*, 210 F.3d at 948 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Instead, as the party seeking removal and opposing remand, a defendant bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). All doubts about federal jurisdiction must be resolved in favor of remand. *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

## II.  ANALYSIS

### A.  Federal Officer Removal Statute

As a rule, where a complaint pleads only state law claims, a federal court does not typically have jurisdiction based on a federal defense. *See Crews v. Gen. Am. Life Ins. Co.*, 274 F.3d 502, 504 (8th Cir. 2001). However, pursuant to 28 U.S.C. § 1442, the Federal Officer Removal Statute, an exception to the rule exists. For it to apply, the removing defendant must plausibly allege that (1) the defendant is a person under the statute; (2) the defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the defendant's actions and the official authority; and (4) the defendant raises a colorable federal defense. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).

Whether 3M may remove this action under the Federal Officer Removal Statue turns only on whether it raises a colorable federal defense,[1] which in turn depends on whether the defense is plausible. *See United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

**1. Government Contractor Defense**

To assert a colorable government contractor defense, 3M must show that it could not have complied, at the same time, with obligations owed to the military and Minnesota state law, thus creating a significant conflict between state tort liability and a federal interest. *See In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 629 (2d Cir. 1990). If so, then state law, which would otherwise impose liability for a failure to warn of dangers in using military equipment, would be displaced. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995).

To determine whether state law has been displaced, courts consider three necessary criteria: whether (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government;

---

[1] 3M is a person, as a corporation. *See Jacks*, 701 F.3d at 1230 n.3. Further, the military wanted an earplug to protect soldiers' ears from loud noises and 3M was asked to supply it, which satisfies the "acting under" requirement, as it involves "helping the Government to produce an item that it needs." *Id.* at 1230, 1232 (quotation omitted). With respect to the necessary "causal connection," the defendant must show that the act for which it is being sued has a "connection" or "association" with a governmental act, *Graves v. 3M Co.*, 447 F. Supp. 3d 908, 913 (D. Minn. 2020), which is also satisfied here, as 3M's supply of the CAEv2 to the military was connected with the latter's acts to provide soldiers with earplugs.

and (3) the contractor warned the government of the dangers in the military equipment's use known to the contractor but not to the government. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 256 (4th Cir. 2017).

### a. Government Discretion

With respect to the first criterion,[2] where the government "goes beyond approval and actually determines for itself the warnings to be provided," the contractor satisfies this criterion because the government has thus exercised discretion. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *see also Sawyer*, 860 F.3d at 256 (finding the condition satisfied when the contractor, under specifications provided by the government, was prohibited from affixing any type of warning or caution statement). "On the other hand, if the government merely suggested or considered certain warnings, then the contractor might well retain full ability to comply with state requirements." *Graves v. 3M Co.*, 447 F. Supp. 3d 908, 915 (D. Minn. 2020).

---

[2] As a preliminary matter, generally a contract between the government and the contractor specifies whether or which warnings to provide, thus conveying governmental discretion. Plaintiffs question if the analysis needs to proceed further in the absence of such a contract. The Court notes that it is likely sufficient to demonstrate a continuous back and forth between a contractor and the government in lieu of a contract. *See, e.g.*, *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-2885, 2020 WL 365617, at *5 (N.D. Fla. Jan. 22, 2020) (finding sufficient evidence of a continuous back and forth between 3M and the military with respect to "the design, review, and testing phases of the CAEv2" to constitute plausible evidence that the military considered and approved "the design feature in question"). Assuming, without deciding, that there was sufficient back and forth between 3M and the military with respect to the CAEv2's warnings and instructions, the Court will continue its analysis, as it will find that 3M fails to satisfy the first criterion irrespective of 3M's particular contractual arrangement with the military.

Here, while the military took some initiative to create wallet cards for soldiers and military audiologists were involved in fitting soldiers, the evidence indicates that both of these processes were guided by information shared by 3M. That is, instead of actually determining or approving which warnings to provide, the military relied on information from 3M, as when the military made a change to its wallet card after 3M shared information to achieve an optimum noise reduction rating, or when 3M similarly instructed military audiologists to roll back the flange. As such, 3M was in the driver's seat, not the military, and 3M could have provided instructions in compliance with state law without running afoul of any military discretion (i.e., warning that the CAEv2 could loosen in any size ear canal if the flanges were not folded back, not just very large ones, as indicated by the tests performed in 2000).

Alternatively, 3M contends that the military's request to not include warnings in the bulk shipments demonstrates that the military unilaterally decided which warnings to provide, which precluded 3M from complying with state law. While it is true that, when deposed in 2019, Santoro said that 3M was orally instructed not to include instructions in these shipments because the military had decided instead to rely on its military audiologists to properly fit the CAEv2, other evidence cuts against this assertion. First, as Berger stated in 2001 around the time of the bulk shipment discussion, the military did not request instructions from 3M because it wanted to keep costs down as the order volumes were low at that time, which does not demonstrate an exercise of government

-11-

discretion as to the type or content of warnings that 3M was to provide.  Additionally, the

military never said or did anything to prevent 3M from affixing a warning on the box[3] to

advise of the hazards that an improper fit of the CAEv2 posed.  As such, doing so would

not have been in conflict with any government requirement.

Further, in 2004, Ohlin wrote to Meyers at 3M, expressing concern that soldiers

were not receiving proper instructions for the earplugs and asking about the possibility of

providing them with individual instructions.  Most important, Ohlin was concerned that

soldiers were using the wrong side of the earplug in specific environments, not that they

did not know to fold back the flanges for a proper fit.  As such, Ohlin's inquiry reveals both

that he was unaware of the danger that the CAEv2 may imperceptibly loosen irrespective

of ear canal size, and that the military did not seek to prohibit 3M from providing

instructions.

In sum, the Court finds that 3M fails to show that the military exercised discretion

with respect to warnings and instructions for the CAEv2.   Accordingly, the Court finds

that the first criterion has not been satisfied.

### b.  Contractor Compliance

With respect to the second criterion, the "defense is inapplicable to a failure to

warn claim in the absence of evidence that in making its decision whether to provide a

---

[3] *See, e.g.*, 40 C.F.R. § 211.204-4 ("In the case of bulk packaging and dispensing [of hearing protective devices], [] supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location."); *cf. Sawyer*, 860 F.3d at 256 (prohibiting the contractor from affixing any warning beyond those required by the military).

warning," a contractor was "acting in compliance with reasonably precise specifications imposed on it by the United States." *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) (cleaned up); *see also Sawyer*, 860 F.3d at 256–57 (finding the criterion satisfied when the contractor provided the actual warnings required by the Navy and would be penalized for any deviation). Here, the military did not require 3M to comply with any reasonably precise specifications concerning the content or type of warning to provide with the CAEv2. Accordingly, the Court finds that the second criterion has not been satisfied.

### c. Communicating Known Dangers to the Government

Finally, with respect to the third criterion, the contractor must demonstrate that it communicated to the government all dangers known to it but not to the government. *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1004 (7th Cir. 1996); *see also Sawyer*, 860 F.3d at 256–57 (finding the criterion satisfied when the military's knowledge of the hazards exceeded the contractor's).

Here, the evidence demonstrates that 3M did not warn the military of all risks posed by the CAEv2 known to it, as revealed by the tests conducted in 2000. While some communications to the military focused on folding back the flanges to achieve optimum performance, this is distinct from disclosing risks such as developing hearing loss or tinnitus if the CAEv2 was allowed to imperceptibly loosen or that 3M knew that user

instructions needed to be revised irrespective of ear canal size based upon the test results.

Further, as discussed above, even though Ohlin expressed concern to Meyers at 3M about soldiers developing hearing loss when using the wrong side of the CAEv2 in specific noise environments, Meyers does not ever recall 3M telling the military that a warning or caution needed to be added to address how the flanges must be folded back to get a proper fit within the ear canal, even though 3M also knew that a quality instruction sheet would benefit the soldiers given that they were not properly fitting the CAEv2.

As such, 3M did not communicate to the military all dangers inherent to the use of the CAEv2 known to 3M but not to the military.  Thus, the Court finds that the third criterion has not been satisfied.

In sum, 3M has not satisfied any of the criteria and, therefore, no significant conflict between state tort liability and a federal interest exists.  "[W]here no conflict exists between requirements imposed under a federal contract and a state law duty to warn . . . we defer to the operation of state law."  *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d at 631; *see also Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1490 (11th Cir. 1990) ("The contractor could comply with both its contractual obligations and the state-prescribed duty of care.  State law cannot be displaced in this context." (quotation omitted)).  Accordingly, the Court finds that 3M has failed to raise a colorable government

contractor defense and the Court therefore lacks subject matter jurisdiction based upon this ground.

### 2. Combatant Activities Exception

3M next argues that it raises a colorable federal defense with respect to the combatant activities exception, which provides that, when "a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted." *Saleh v. Titan Corp.*, 580 F.3d 1, 9 (D.C. Cir. 2009). However, tort claims arising out of contractor services that are judged to be separate and apart from combat activities would not be preempted. *See id.*

The Court has decided this issue before with respect to civilians and civilian contractors who acquired the CAEv2 on the commercial market. *Copeland v. 3M Co.*, No. 20-1490, 2020 WL 5748114, at *3 (D. Minn. Sept. 25, 2020). Here, the facts now involve 3M supplying the CAEv2 to the military, which 3M argues implicates an activity either necessary to or in direct connection with actual hostilities, as the CAEv2 was worn in combat, thus making the exception a colorable defense.

However, 3M suggests a scope much broader than what courts have allowed for the exception to apply in such circumstances, as the equipment must have still been supplied by a contractor engaged in actual combat or while in a combat area. *See, e.g., In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 351 (4th Cir. 2014) (providing waste

management and water treatment functions in a combat area); *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 481 (3d Cir. 2013) (maintaining electrical systems on a military base in a warzone); *Aiello v. Kellogg, Brown & Root Servs., Inc.,* 751 F. Supp. 2d 698, 711–13 (S.D.N.Y. 2011) (providing basic life support services for active military combatants on a forward operating base); *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948) (supplying ammunition to fighting vessels in a combat area during war).

Conversely, merely shipping the CAEv2 to the military does not involve performing contractor activity while engaged in actual combat or while actively in a combat area. As such, the Court's reasoning remains unaffected, even when accounting for the different supply chain here: 3M, itself, was still not integrated into combatant activities over which the military retained command authority when supplying the CAEv2. *See Copeland*, 2020 WL 5748114, at *3. Accordingly, the Court finds that 3M fails to show a uniquely federal interest in significant conflict with state law and, thus, fails to raise the combatant activities exception as a colorable defense. The Court therefore finds that it does not have subject matter jurisdiction over Plaintiffs' claims based upon this ground**.**

## B. Federal Enclave Jurisdiction

3M asserts that the federal enclave doctrine also supports removal. Personal injury actions arising from incidents occurring on federal enclaves may be removed to federal district court, *see Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998), as the grant of exclusive jurisdiction to the United States bars state regulation over

enclaves without specific congressional action, *see W. River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713, 716 (8th Cir. 1990).  However, for removal jurisdiction to be proper in such cases, it is necessary that the locus in which the tort claim arose be the federal enclave itself.[4]  *Sultan v. 3M Co.*, No. 20-1747, 2020 WL 7055576, at *8 (D. Minn. Dec. 2, 2020).

Under common-law tort principles, it is "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action[.]"  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotation omitted).  "Under the traditional rule of accrual, the tort cause of action accrues . . . when the wrongful act or omission results in damages.  *Id.* at 391 (quotation omitted).[5]

Here, none of the *Bischoff*, *Anderson*, or *Briones* Plaintiffs allege wearing the CAEv2 stateside; instead, they all allege that they suffered injury only while overseas. Necessarily, then, these Plaintiffs' claims did not arise on any federal enclave.  With respect to the *Akin* Plaintiffs, most allege that they first acquired the CAEv2 while on stateside military bases or installations, which could likely be federal enclaves.  However,

---

[4] Military bases can be enclaves, *see Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012), but the doctrine does not extend to military installations overseas, *see Copeland*, 2020 WL 5748114, at *4.

[5] The Court notes that under Minnesota law the same result obtains, as an action accrues at such time as it could be brought in a court of law without dismissal for failure to state a claim, and a tort action cannot be properly brought until damages have resulted.  *See Dalton v. Dow Chem. Co.*, 158 N.W.2d 580, 584 (Minn. 1968).

all these Plaintiffs also allege that they first suffered injury only once engaged in combat

overseas, not before while stateside.[6]  As such, the *Akin* Plaintiffs' claims did not arise on

any federal enclave either, for it was only once abroad that they had a complete and

present cause of action.[7]  As such, the Court finds that it lacks subject matter jurisdiction

over Plaintiffs' claims in all four actions based upon this ground.

## C.  Remaining Grounds: Article IV and Admiralty Jurisdiction

In *Sultan*, the Court found that 3M failed to establish removal jurisdiction pursuant

to the Property Clause of Article IV, as the Clause only confers federal jurisdiction over

claims arising in a land, territory, possession, or property once Congress has affirmatively

acted to this end, yet Congress did not do so with respect to military base or installations

---

[6] It is quite possible that similar actions will come before the Court, which will likely involve similar questions regarding the loci in which future plaintiffs' claims arose.  For the sake of judicial economy and an efficient use of the Court's and the parties' resources, the Court strongly suggests that Plaintiffs' counsel, if counsel for future plaintiffs with similar claims, provide sufficient information **before** related hearings to obviate the need to engage in jurisdictional discovery afterward.  After having litigated many similar actions, counsel should now have a firm idea of what information is needed for the Court to determine federal enclave questions.

[7] 3M challenges the *Akin* Plaintiffs' allegations, arguing namely that any injuries suffered from explosions are unrelated to the CAEv2, as the earplug was only to protect against the use of heavy machinery and gunfire, and that Plaintiffs offer contradictory allegations by suggesting that damages related to the CAEv2 can both happen imperceptibly and be identified with precision. The Court notes that these arguments do likely chip away at the overall strength of Plaintiffs' claims, especially with respect to the amount of damages likely incurred if 3M is found liable, but not to the point of rendering the claims implausible, especially since all doubts about federal jurisdiction must be resolved in favor of remand.  *Dahl*, 478 F.3d at 968.

in Iraq.[8]  *Sultan*, 2020 WL 7055576, at *9.  In *Sultan*, the Court also found that 3M failed

to establish that the Court had admiralty jurisdiction over any claims arising on navigable

waters, as 3M's alleged tortious activity does not demonstrate a substantial relationship

to traditional maritime activity.  *Id.* at *10.

Because 3M was a party in *Sultan* and the issues with respect to Article IV and

admiralty jurisdiction are the same as those litigated in *Sultan*, and because there was a

final judgment in *Sultan*, to which both grounds for removal jurisdiction were essential,

the Court finds that 3M is precluded from asserting these grounds.  *See Sandy Lake Band*

*of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102–03 (8th Cir. 2013); *see also*

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979) (concluding that district courts

have broad discretion to employ offensive issue preclusion when it would not lead to

unfair or inconsistent results).  Accordingly, the Court finds that it does not have subject

matter jurisdiction over Plaintiffs' claims based upon these grounds.

## CONCLUSION

Because 3M fails to raise colorable federal defenses, neither the government

contractor defense nor the combatant activities exception provides a ground for removal.

Additionally, because all Plaintiffs allege that their claims arose overseas, federal enclave

jurisdiction is lacking.  Finally, 3M is precluded from asserting Article IV jurisdiction and

---

[8] As noted in *Sultan,* though 3M asserts that Article IV confers jurisdiction over claims arising in Afghanistan as well, it does not spend more than a sentence developing any argument in support of this.  Thus, as in *Sultan*, the Court only considers this issue with respect to Iraq.

admiralty jurisdiction based on the Court's earlier ruling in *Sultan*.  Accordingly, the Court

finds that it lacks subject matter jurisdiction over Plaintiffs' claims and will therefore grant

Plaintiffs' Motions to Remand.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Plaintiffs' Motions to Remand:

1. Bischoff et al., CV20-1984, Docket No. 9;

2. Anderson et al., CV20-2010, Docket No. 9;

3. Briones, CV20-2042, Docket No. 9;

4. Akin et al., CV20-2125, Docket No. 14;

are **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  January 27, 2021                      _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                              Chief Judge
                                                   United States District Court